**LATHAM & WATKINS LLP**
Kevin M. McDonough
1271 Avenue of Americas
New York, NY 10020
Telephone: (212) 906-1200
Email: kevin.mcdonough@lw.com

*Attorneys for Defendants CoStar*
*Group, Inc. and CoStar Realty*
*Information, Inc.*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, *as an assignee of individuals who are Covered Persons,* JANE DOE-1, *a law enforcement officer,* JANE DOE-2, *a law enforcement officer,* EDWIN MALDONADO, SCOTT MALONEY, JUSTYNA MALONEY, PATRICK COLLIGAN, and PETER ANDREYE, <br><br> Plaintiffs, <br><br> v. <br><br> COSTAR GROUP, INC., COSTAR REALTY INFORMATION, INC., RICHARD ROES 1-10, *fictitious names of unknown individuals* and ABC COMPANIES 1-10, *fictitious names of unknown entities,* <br><br> Defendants. | CASE NO. 1:24-cv-04111-HB <br><br> Hon. Harvey Bartle, III <br><br><br> **AMENDED NOTICE OF REMOVAL** |

## D.N.J. LOCAL RULE 10.1 STATEMENT

The plaintiffs in this action are Atlas Data Privacy Corporation, Jane Doe-1, Jane Doe-2, Edwin Maldonado, Scott Maloney, Justyna Maloney, Patrick Colligan, and Peter Andreyev. The address for Atlas Data Privacy Corporation is 201 Montgomery Street, Suite 263, Jersey City, New Jersey 07302. The remaining addresses are unknown to defendants CoStar Group, Inc. and CoStar Realty Information, Inc. ("CoStar"), which is filing this Amended Notice of Removal. CoStar is unable to locate the precise address of plaintiffs Jane Doe-1 or Jane Doe-2, whose identities are unknown. And CoStar is unable to locate the precise addresses of the remaining individual plaintiffs who, as is set forth in their Complaint, are law enforcement officers who have availed themselves of New Jersey laws to conceal their addresses. Plaintiffs are represented by Rajiv D. Parikh, Esq. of Pem Law LLP, 1 Boland Drive, Suite 1010, West Orange, NJ 07053; Kathleen Barnett Einhorn, Esq. of Genova Burns LLC, 494 Broad Street, Newark, NJ 07102; and John A. Yanchunis, Esq. and Ryan J. McGee, Esq. of Morgan & Morgan, 201 N. Franklin St., 7th Floor, Tampa, FL 33602.

The defendants in this action are CoStar Group, Inc. and CoStar Realty Information, Inc., 1331 L Street NW, Washington, DC 20005. CoStar is represented by Serrin Turner, Esq. and Kevin M. McDonough, Esq. of Latham & Watkins LLP, 1271 Avenue of the Americas, New York, NY 10020; Scott Joiner, Esq. of Latham

& Watkins LLP, 505 Montgomery St #2000, San Francisco, CA 94111; and Bradley Baglien, Esq. of Latham & Watkins LLP, 555 11th St NW, Washington, DC 20004.

**TO THE CLERK OF THE ABOVE-TITLED COURT, PLAINTIFFS, AND COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that Defendants CoStar Group, Inc. and CoStar Realty Information, Inc. ("CoStar"), through undersigned counsel, hereby file this Amended Notice of Removal to remove the above-captioned action—with reservation of all defenses and rights—from the Superior Court of New Jersey, Bergen County, to the United States District Court for the District of New Jersey, Newark Division, pursuant to 28 U.S.C. §§ 1332(a), 1332(d), 1367, 1441, and 1446. The grounds for removal are as follows:

**INTRODUCTION**

1.    This action is one of over 100 lawsuits filed by plaintiff Atlas Data Privacy Corporation ("Atlas") and its counsel asserting violations of New Jersey's Daniel's Law, N.J.S.A. 56:8-166.1, a recently enacted statute intended to help judges, law enforcement officers, child protective investigators, prosecutors, and their immediate family members protect their home addresses and unpublished home telephone numbers from being publicly disclosed online. The statute allows such individuals ("covered persons") to request that a business or website refrain from

publicly disclosing this information, and provides that the recipient must comply within 10 business days, subject to "liquidated damages" of $1,000 "for each violation." N.J.S.A. 56:8-166.1(c)(1).

2.     Atlas's lawsuits, however, have little to do with protecting public servants, or even ensuring that their private information is removed from the internet. Instead, Atlas's sole business is to monetize Daniel's Law, through a scheme that involves (i) recruiting covered persons to register with Atlas online; (ii) having those covered persons purport to assign their claims to Atlas, under a hastily added, unexplained 2023 amendment to Daniel's Law; (iii) selecting hundreds of businesses to be notified under Daniel's Law; (iv) sending *tens of thousands* of automated requests *en masse* to each business on behalf of covered persons, with the aim of overwhelming the recipient and preventing it from being able to process the requests in time; and lastly (v) filing suit on behalf of those covered persons against these hundreds of businesses, seeking tens of millions of dollars in statutory damages in each case.

3.     The assignments that Atlas purportedly received have no apparent purpose other than to prosecute this cynical lawsuit (among others brought by Atlas) in a way that avoids federal jurisdiction. Even though the suit purports to be brought on behalf of nearly 20,000 individuals, each with an alleged claim under Daniel's Law, this case has not been pled as a class action as any other comparable case would

be. The only plausible explanation is that Atlas is seeking to avoid federal jurisdiction under the Class Action Fairness Act ("CAFA"). And Atlas has conveniently been incorporated in Delaware, like CoStar and many of the other defendants Atlas has sued across its 100-plus complaints—as part of an attempt to thwart federal jurisdiction on traditional diversity grounds.

4.      Federal jurisdiction cannot be so easily evaded. Where (as here) a plaintiff orchestrates a collusive assignment of claims in an effort to destroy diversity, it is proper for courts to ignore the citizenship of the non-diverse assignee (here, Atlas) and exercise diversity jurisdiction over the action. *See Grassi v. Ciba-Geigy, Ltd.*, 894 F.2d 181, 185 (5th Cir. 1990) ("This right [to removal] would be an illusory one indeed if a plaintiff could defeat it by the simple expedient of assigning a fractional interest in the outcome of the suit to an agent performing what is essentially litigation support on a contingent fee basis."). When Atlas is properly excluded from the citizenship analysis on these grounds, there is complete diversity of citizenship between the individual New Jersey plaintiffs, on the one hand, and CoStar (a Delaware corporation headquartered in Washington, D.C.), on the other. All other jurisdictional requirements are met. Accordingly, this case is subject to removal based on diversity jurisdiction under 28 U.S.C. § 1332(a).

5.      In addition, information that Atlas recently revealed about the putative claim assignments makes clear that federal jurisdiction is also proper under CAFA.

Where (as here), a plaintiff *partially* assigns their interests in legal claims, with some rights (financial, injunctive, or otherwise) still held by the assignors as the true claimants, courts may consider the unnamed assignors for purposes of assessing jurisdiction under CAFA. The result here is that the case is removable as a "mass action" under CAFA, as it satisfies (1) the CAFA class action requirements of (a) minimal diversity and (b) $5,000,000 *aggregate* amount-in controversy; and (2) the CAFA mass action requirements of (a) monetary relief claims of 100 or more persons, and (b) $75,000 *individual* amount-in-controversy. Accordingly, federal jurisdiction is proper under CAFA, 28 U.S.C. § 1332(d).

## PROCEDURAL BACKGROUND

6.    On February 6, 2024, Plaintiffs Edwin Maldonado, Scott Maloney, Justyna Maloney, Patrick Colligan, Peter Andreyev, and Jane Does 1 and 2 ("Individual Plaintiffs) filed a complaint ("Complaint") against CoStar and unidentified individuals and companies in the Superior Court of New Jersey, Bergen County. The Complaint names Atlas as lead plaintiff, however, which purports to assert claims as an assignee on behalf of "approximately 19,496" individuals who are allegedly covered persons under Daniel's Law ("Unidentified Covered Persons"). The action is captioned *Atlas Data Privacy Corporation et al. v. CoStar Group, Inc., et al.*, Docket No. BER-L-000770-24.

7.      According to the Complaint, Atlas "recommended" that the Individual Plaintiffs and Unidentified Covered Persons send suppression requests to various businesses and websites under Daniel's Law. Compl. ¶ 33. The Complaint alleges that the Individual Plaintiffs and Unidentified Covered Persons sent such requests "[s]tarting on or about December 28, 2023." *Id.* ¶ 51. The requests were in fact sent *en masse* beginning that day, *by Atlas*, in an enormous email blast—part of an intentional spamming attack designed to increase the likelihood that CoStar would be unable to respond to the requests within the ten-day period specified in Daniel's Law.

8.      On February 29, 2024, counsel for CoStar accepted service of the Complaint, and CoStar filed an acknowledgement of service on March 1, 2024. *See* Exhibit A.

9.      On March 22, 2024, CoStar timely removed the action to the U.S. District Court for the District of New Jersey, Newark Division, on the basis of diversity jurisdiction under 28 U.S.C. § 1332(a). *See* Dkt. No. 1.

10.      On April 2, 2024, pursuant to 28 U.S.C. § 292(b), Chief Judge Michael A. Chagares of the United States Court of Appeals for the Third Circuit designated and assigned the action to the Honorable Judge Harvey Bartle, III of the United States District Court for the Eastern District of Pennsylvania, along with approximately 60 other related cases filed by Atlas asserting violations of Daniel's

Law against various defendants. *See* Dkt. No. 6. The action was subsequently reallocated to the U.S. District Court for the District of New Jersey, Camden Division. *See* Dkt. No. 8.

11.    After the case was initially removed, CoStar discovered it may have additional grounds for removal under CAFA. Through news media coverage concerning Atlas's lawsuits first published on or about April 12, 2024,[1] CoStar discovered that any assignments made to Atlas by Unidentified Covered Persons would have been only *partial* assignments and that the Unidentified Covered Persons retain a financial interest in the assigned claims. These facts were not previously evident from the face of the Complaint, and they revealed an additional basis for subject matter jurisdiction under CAFA, prompting this Amended Notice.

## LEGAL STANDARD

12.    A notice of removal requires only "a short and plain statement of the grounds for removal," 28 U.S.C. § 1446(a), that contains "plausible allegation[s]" that the Court's jurisdictional requirements are satisfied. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84 (2014); *see also Farrell v. FedEx*

---

[1] *See* Charles Toutant, "140 Lawsuits: Is This Attorney Monetizing Daniel's Law?," LAW.COM NEW JERSEY LAW JOURNAL (April 12, 2024) ("In those cases, should these companies continue to defy the law and financial compensation be awarded, the covered persons will receive 65% of all court awards."); *see also* Matt Friedman, "How a law meant to protect public workers may have created a lawsuit gold mine," POLITICO (April 24, 2024) ("65 percent of the penalty it wins in court goes to the plaintiff.").

*Ground Package System, Inc.*, 478 F. Supp. 3d 536, 540 (D.N.J. 2020) ("the grounds for removal should be made in 'a short plain statement,' just as required pleadings under Fed. R. Civ. P. 8(a)" (citation omitted)); *Matthews v. Bank of America Corp.*, 2020 WL 9786649, at *3 (D.N.J. Feb. 18, 2020) ("Just like complaint, a notice of removal need only 'contain[] a short and plain statement of the grounds for removal.'" (alteration in original) (quoting 28 U.S.C. § 1446(a)). The notice need not contain "evidentiary support," and the Court "should accept a removing defendant's allegations" in the absence of countervailing evidence by the plaintiff. *Farrell*, 478 F. Supp. 3d at 540 (citing *Dart Cherokee*, 574 U.S. at 87-88). In the event Plaintiffs contest the factual basis for removal, a defendant is entitled to discovery relating to the claim that diversity jurisdiction exists. *See, e.g.*, *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 102 (3d Cir. 2015) (the party alleging diversity jurisdiction is "entitled to limited discovery for the purpose of establishing that complete diversity exists" when a factual challenge is made); *City of New York v. Permanent Mission of India to the United Nations*, 446 F.3d 365, 367-68 (2d Cir. 2006) (discovery was permitted on jurisdictional questions following removal to federal court).

**THIS COURT HAS DIVERSITY JURISDICTION PURSUANT TO 28 U.S.C. § 1332(a)**

13.     Federal district courts have original diversity jurisdiction over all civil actions where the amount in controversy exceeds $75,000 and the action is between citizens of different states. 28 U.S.C. § 1332(a).

14.     Each of the requirements of diversity jurisdiction is met here because (i) there is complete diversity of citizenship between CoStar and the Individual Plaintiffs; (ii) Atlas's citizenship can and should be disregarded for purposes of diversity jurisdiction; (iii) the amount in controversy exceeds $75,000, exclusive of interests and costs; and (iv) all other requirements for removal have been satisfied.

**A.     There is Complete Diversity of Citizenship**

15.     This action satisfies the complete diversity requirement of 28 U.S.C. § 1332(a)(1).

16.     CoStar is organized under the laws of Delaware with its principal place of business in Washington, D.C. CoStar is thus a citizen of Delaware and the District of Columbia for purposes of diversity jurisdiction. *See* 28 U.S.C. § 1332(c)(1).

17.     Each of the Individual Plaintiffs are current or former New Jersey law enforcement officers, and are alleged to be "liv[ing]" or "working" in New Jersey currently:

a. Plaintiff JANE DOE-1 is described as a police officer "working in Northern New Jersey." Compl. ¶ 15.

b. Plaintiff JANE DOE-2 is described as a correctional police officer who "lives in Northern New Jersey." *Id.* ¶ 16.

c. Plaintiff Edwin Maldonado is described as a member of the Plainfield, New Jersey police department. *Id.* ¶ 17.

d. Plaintiffs Scott Maloney and Justyna Maloney are described as police officers "currently serving with the Rahway, New Jersey Police Department." *Id.* ¶ 18.

e. Plaintiff Patrick Colligan is described as a member of the Franklin Township police department in Somerset, New Jersey. *Id.* ¶ 22.

f. Plaintiff Peter Andreyev is described as a veteran of the Point Pleasant, New Jersey police department, and current Executive Vice President of the New Jersey State Policemen's Benevolent Association. *Id.* ¶ 23.

18. Further, under New Jersey law, "[e]very member of a police department and force shall be a resident of the State of New Jersey while serving in such position." N.J.S.A. 40A:14-122.8.

19. Accordingly, by all appearances, each of the Individual Plaintiffs is a citizen of New Jersey.

20.    The Complaint alleges that Atlas is a Delaware corporation with its principal place of business in New Jersey. Compl. ¶ 24. Atlas purports to assert claims as an assignee on behalf of "approximately 19,496" Unidentified Covered Persons. Atlas was created for precisely this purpose—*i.e.*, as a litigation vehicle for the lawyers who have brought this lawsuit and others like it.

21.    Atlas did not exist when Daniel's Law was passed in November 2020, but it incorporated in Delaware just five months later. *See* Exhibit B. Then, in 2023, Genova Burns, LLC—one of the law firms representing Atlas in this litigation— registered as a lobbyist for Atlas in New Jersey to push for amendments to Daniel's Law to specifically include an assignment provision, which was added to the statute on July 20, 2023. *See* Exhibit C. Presumably at some point after that, the Unidentified Covered Persons assigned their claims to Atlas. *See* Compl. ¶25. Then, in order to prosecute the claims, Atlas was hastily registered to do business in New Jersey on January 12, 2024 (keeping its Delaware incorporation status),[2] and filed suit against CoStar and hundreds of other companies less than a month later—with its lobbying counsel signing on as Plaintiffs' counsel.

22.    The Complaint offers no plausible alternative explanation of why nearly 20,000 people would assign legal claims (whether in whole or in part) they

---

[2]    *See* "Atlas Data Privacy Corporation," Entity ID 0451071286; https://www.njportal.com/DOR/BusinessNameSearch/Search/BusinessName.

purportedly have for compensatory and punitive damages against numerous companies. As described in the Complaint, Atlas is merely an "online platform, including an email service," that covered persons can use to send requests to businesses that they not disclose their home addresses or phone numbers. Compl. ¶¶ 30-32. There is no apparent legitimate reason why anyone—let alone nearly 20,000 people—would choose to give away their right to recover damages to such an entity, particularly if they have allegedly suffered some sort of harm for which compensation would be appropriate.

23.    Certainly, there was no need for these individuals to assign their claims to Atlas or anyone else in order to bring a lawsuit. They were entitled to bring suit individually in their own names, just like the Individual Plaintiffs. And to the extent collective litigation of the claims is needed for efficiency reasons, there is an obvious mechanism already available—a class action—that does not require anyone to assign their rights to anyone else and allows each class member to fully retain the putative value of their own claims. Had such a class action been brought, it would have clearly been subject to federal jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d).

24.    Based on these considerations, and upon information and belief, the alleged assignment of approximately 20,000 individuals' claims to Atlas was done

as part of a collusive effort to avoid federal jurisdiction. Therefore, the citizenship of Atlas should be disregarded for purposes of determining diversity.

25.    "A plaintiff may attempt to create or destroy diversity jurisdiction by making a transfer which is an assignment in name only. In either case, the plaintiff tampers with the jurisdiction of the court by artificially affecting it." *Attorneys Trust v. Videotape Computer Products, Inc.*, 93 F.3d 592, 593 (9th Cir. 1996); *see also* Arthur R. Miller, 13F Fed. Prac. & Proc. Juris. § 3641 (3d ed. 2023) ("Wright & Miller") ("[A] number of federal courts have refused to ignore the possibility that a plaintiff may have engaged in a collusive attempt to manipulate the forum for a particular lawsuit and have retained removed cases on the basis of diversity jurisdiction after they have inquired into the validity of a state law transaction."). Federal law also provides that "[a] district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court." 28 U.S.C. § 1359. Though Section 1359 applies to collusive attempts to *create* diversity jurisdiction, these "informing principles are much the same" when a plaintiff attempts to *destroy* diversity through a collusive assignment. *Attorneys Trust*, 93 F.3d at 595.  "Because of their similarity, assignments which destroy diversity and assignments which create diversity should be analyzed under the same standard; that is, the issue of whether the assignment as improperly or collusively made is to be

14

resolved as a simple question of fact." *Grassi,* 894 F.2d at 186. (affirming decision

disregarding an entity's citizenship when it had "no legitimate and independent

interest in the litigation, but was simply providing litigation support services on a

contingent fee arrangement at the behest of the appellants' attorney"); *accord*

*Attorneys Trust*, 93 F.3d at 598 ("[T]here is no more reason for federal courts to

countenance destruction of jurisdiction by the use of straw parties than there is for

them to countenance the creation of jurisdiction in that manner . . . .  In either event,

another party is deprived of a forum to which he would otherwise be entitled, and

the jurisdiction which Congress conferred upon the federal courts is manipulated.").[3]

26.    And because Atlas has publicly revealed that it is only a *partial*

assignee, with some rights (financial, injunctive, or otherwise) still held by the

assignors as the true claimants (*see* fn. 1, *supra*), there is a particularly strong case

for disregarding Atlas's citizenship in assessing diversity. *See Attorneys Trust*, 93

---

[3] *3BTech, Inc. v. Wang*, 534 F. Supp. 3d 973, 987 (N.D. Ind. 2021) (dismissing claim for lack of subject matter jurisdiction where plaintiff collusively assigned claim to diverse defendant in order to establish federal diversity jurisdiction); *NPD Mgmt. & Bldg. Servs., Inc. v. Geismar N. Am., Inc.*, 2021 WL 5231870 (E.D. La. Nov. 10, 2021) ("[A] plaintiff may not make a 'collusive' partial assignment of its interests in the subject matter of litigation to destroy valid diversity jurisdiction and to prevent the removal of an action to federal court."); *Cambridge Place Inv. Mgmt., Inc. v. Morgan Stanley & Co.*, 813 F. Supp. 2d 242, 244-45 (D. Mass. 2011) (concluding, after jurisdictional discovery, that assignments were collusive and disregarding assignments for purposes of determining diversity jurisdiction); *JMTR Enters., LLC v. Duchin,* 42 F. Supp. 2d 87, 93 (D. Mass. 1999) (ignoring citizenship of assignee who was assigned claims in an attempt to destroy diversity jurisdiction); *Picquet v. Amoco Production Co.*, 513 F. Supp. 938, 942-43 (1981) (same); *see also Renaissance Mktg., Inc. v. Monitronics Int'l, Inc.,* 606 F. Supp. 2d 201, 208 (D.P.R. 2009) ("District courts will not allow removal jurisdiction to be defeated by the plaintiff's destruction of complete diversity of citizenship by the collusive or improper joinder of parties or the assignment of claims.").

F.3d at 597 (holding that courts are "sensitive and concerned by manipulation of their jurisdiction with partial assignments which lack reality and amount to no change in the identity of the party with the real interest in the outcome of the case"); *see also Grassi*, 894 F.2d at 185 ("We accordingly hold that federal district courts have both the authority and the responsibility...to examine the motives underlying a partial assignment which destroys diversity and to disregard the assignment in determining jurisdiction if it be found to have been made principally to defeat removal").

27.    In assessing whether an assignee's citizenship should be disregarded for purposes of diversity, courts are permitted to "look beyond the four corners of a complaint" and independently consider the "factual predicates . . . for [the court's] subject matter jurisdiction." *Erie Ins. Exch. v. Erie Indem. Co.*, 68 F.4th 815, 820 (3rd Cir. 2023); *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016).

28.    Here, Plaintiffs have improperly joined Atlas as a party in this action solely for the purpose of defeating federal jurisdiction – bringing what is effectively a makeshift class action on behalf of approximately 20,000 New Jersey citizens (all of whom retain a majority interest in their individual claims) through a collusive assignment to a Delaware corporation, designed to prevent removal of the action by another Delaware corporation. There is no other plausible reason to structure the claims—and the litigation as a whole—in such a convoluted manner. In such

16

circumstances, the Court should disregard the citizenship of Atlas in determining whether complete diversity exists.

29.    As noted above, CoStar is a citizen of Delaware and the District of Columbia. Aside from Atlas, the only parties identified in the Complaint (the Individual Plaintiffs) are citizens of New Jersey; none are alleged to be citizens of Delaware or the District of Columbia.

30.    Accordingly, complete diversity of citizenship exists under 28 U.S.C. § 1332(a)(1).[4]

**B.    The Alleged Amount in Controversy Exceeds $75,000**

31.    The amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(a).

32.    For purposes of removal, the amount in controversy is first assessed by reviewing the allegations of the operative complaint. Where, as here, "the plaintiff's complaint does not state the amount in controversy, the defendant[s]' notice of

---

[4] If the Court nevertheless still questions diversity of citizenship, it should—*before* ruling on any motion to remand—order discovery of Atlas related to the purported claim assignments (including on questions such as the size of the interest assigned, whether the assignee had any interest in the matter before assignment, whether the assignor and assignee had separate counsel, whether the assignee's attorney is controlling the litigation, the timing of the assignment, whether the assignment could be considered a sort of contingent fee arrangement, and whether there was a strong likelihood of prejudice against the defendant). *See Grassi*, 894 F.2d at 186 (describing factors to consider in assessing collusive assignment); *Cambridge Place*, 813 F. Supp. 2d at 244 (same) *NPD Management*, 2021 WL 5231870 at *4 ("[I]t is the reality of an assignment, not the term used to describe it, that courts should look to determine whether it was collusive."). (alteration in original) (citation omitted)).

removal may do so." *Dart Cherokee*, 574 U.S. at 84; *see also Erie Ins. Exch. v. Erie Indem. Co*., 722 F.3d 154, 158 (3d Cir. 2013) (court considers allegations in both complaint and notice of removal). Evidentiary submissions are not required to establish the amount in controversy. *Dart Cherokee*, 574 U.S. at 84; *see also Yucis v. Sears Outlet Stores, LLC*, 813 F. App'x 780, 782 n.2 (3d Cir. 2020) (when "the plaintiff's complaint does not include a specific monetary demand, the removing defendant need only 'plausibl[y] alleg[e] the amount in controversy'" (alteration in original) (quoting *Dart Cherokee,* 574 U.S. at 89)).

33.    Where the amount in controversy exceeds $75,000 for any single plaintiff, the Court may exercise jurisdiction over the entire action under § 1332(a). As the Supreme Court has made clear, "where the other elements of [diversity] jurisdiction are present and at least one named plaintiff in the action satisfies the amount-in-controversy    requirement,    [28    U.S.C.]    § 1367    does    authorize supplemental jurisdiction over the claims of other plaintiffs in the same Article III case or controversy, even if those claims are for less than the jurisdictional amount specified in the statute setting forth the requirements for diversity jurisdiction. *Exxon Mobil Corp. v. Allapattah Servs., Inc*., 545 U.S. 546, 549 (2005); *see also Burgess v. Bennet*, 2021 WL 1050313, at *5 n. 9 (D.N.J. Mar. 19, 2021) ("[A]though these particular plaintiffs' claims may not reach the amount in controversy, so long as one

plaintiff in this case satisfies the jurisdictional amount, this Court may exercise supplemental jurisdiction over the remaining plaintiffs' claims.").

34.    Plaintiffs do not allege a specific dollar amount of damages in the Complaint, but seek numerous forms of relief—including actual or liquidated damages of at least $1,000 "per violation" of Daniel's Law, punitive damages, temporary and permanent injunctive relief, attorneys' fees, and both pre- and post-judgement interest—based on CoStar's alleged failure to timely complete the suppression requests within the time period required by Daniel's Law. These allegations are entirely without merit, and CoStar denies any and all liability. But for purposes of this Amended Notice of Removal, taking Plaintiffs' allegations as true and correct, the "possible" amount in controversy readily exceeds $75,000.

35.    At the outset, the $75,000 threshold is easily satisfied by Atlas's putative claims. Atlas purports to assert claims on behalf of 19,496 covered persons under Daniel's Law, for at least $1,000 "for each violation" of the statute. Compl. ¶23. Even taking the "minimum" amount by assuming a single "violation" per individual, the damages sought by Atlas alone total over $19 million.[5]

---

[5] The Court may consider the value of Atlas's putative claim for purposes of the amount in controversy requirement. While the collusive assignment of claims to defeat diversity allows the Court to disregard Atlas's *citizenship* for removal purposes, that does not in itself imply the assignments are invalid altogether or that the claims otherwise do not now belong to Atlas. Diversity of citizenship is a concept distinct from the amount in controversy, and Atlas should not be allowed to collusively aggregate Daniel's Law claims via assignment to it as a single plaintiff while arguing that aggregation should be disregarded for purposes of the amount in controversy.

36.    Even aside from Atlas's claims, the "possible" amount in controversy for each of the Individual Plaintiffs exceeds $75,000—only one of whom needs to exceed that threshold for the Court to exercise jurisdiction over the entire action under 28 U.S.C. § 1332(a). Each Individual Plaintiff seeks (i) "actual damages, not less than the liquidated damages under Daniel's Law, at '$1,000 for each violation,'" (ii) "an additional amount in punitive damages, to be determined by the Court, for 'willful noncompliance' as allowed under Daniel's Law," (iii) "reasonable attorneys' fees," and (iv) "injunctive relief." *Id*. Adding together potential statutory, actual, and punitive damages that the Complaint seeks, as well as the putative value of injunctive relief and attorneys' fees, each Plaintiff has put far more than $75,000 in controversy.

37.    As noted above, the Complaint seeks statutory damages of $1,000 for "each violation" of Daniel's Law. *Id*. The Complaint does not specify the number of "violations" claimed, but alleges that (i) protected information for the Individual Plaintiffs "remains disclosed" on websites allegedly owned by CoStar, *id*. ¶ 63; and (ii) "each" failure to "cease the disclosure or re-disclosure" of that information "constitute[s] a separate violation under the law." *Id.* ¶ 61. The Complaint thus appears to allege multiple violations for each of the Individual Plaintiffs. Were this

theory accepted, the statutory damages alone could cross the $75,000 threshold for each Individual Plaintiff.[6]

38.    Plaintiffs also seek actual damages and may try to seek recovery for the costs of measures they have allegedly taken for their personal safety, or for alleged anxiety or emotional distress. Such alleged damages would also contribute to the total amount of compensatory damages sought. *See, e.g., Yucis*, 813 Fed. App'x at 782 n.2 (holding that removing defendant plausibly alleged more than $75,000 in controversy based on allegations that plaintiff experienced "pain, suffering, embarrassment, and humiliation" as a result of sexual harassment, as well as attorneys' fees).

39.    In addition to statutory and actual damages, the Complaint seeks punitive damages for "willful noncompliance" with Daniel's Law on behalf of each Individual Plaintiff. Compl. ¶63. In the Third Circuit, claims for punitive damages made in good faith "will generally satisfy the amount in controversy requirement

---

[6] The Complaint does not explain its "per violation" theory of damages, *i.e.*, by specifying how many violations the Individual Plaintiffs claim due to the alleged "ongoing" exposure of their personal information. CoStar disputes any interpretation of Daniel's Law that would allow a single plaintiff to recover statutory damages for multiple "violations" of the law. Nonetheless, because no court has ruled on the issue, the potential for additional violations per person should be considered in determining the amount in controversy. *See, e.g., Peatry v. Bimbo Bakeries USA, Inc.*, 393 F. Supp. 3d 766, 769–70 (N.D. Ill. 2019) (finding removal proper of a complaint asserting violations of the Illinois Biometric Privacy Act because plaintiff did not show that recoverable amount based on "per violation" theory was "legally impossible").

because it cannot be stated to a legal certainty that the value of the plaintiff's claim is below the statutory minimum." *Huber v. Taylor*, 532 F.3d 237, 244 (3d Cir. 2008) (citation omitted); *see also Ifill v. CVS Pharmacy*, 2021 WL 486884, at \*2 (D.N.J. Feb. 9, 2021) (denying motion to remand on grounds that the plaintiff's request for punitive damages satisfied the amount in controversy requirement, because even assuming a single-digit multiplier a plaintiff would only need to recover compensatory damages above $7,500 to bring the total amount above $75,000. *Valenta v. BI Inc*., 2021 WL 7185785, at \*5 (W.D. Pa. Oct. 8, 2021) ("Because Plaintiff's request for punitive damages is appropriately made, this is generally sufficient to satisfy the amount in controversy."); *Johnson v. State Farm Life Ins. Co*., 695 F. Supp. 2d 201, 207-08 (W.D. Pa. 2010) (holding that amount in controversy was satisfied based on plaintiff's request for punitive damages and rejecting the argument that the amount in controversy could not be satisfied because the plaintiff alleged only $10,000 in compensatory damages).

40.    Further, as a matter of New Jersey law, any plaintiff seeking punitive damages is entitled to request up to five times the liability found for compensatory damages "*or $350,000, whichever is greater*." N.J.S.A. 2A:15-5.14b (emphasis added). Thus, the mere fact that the Individual Plaintiffs are seeking punitive damages presumptively satisfies the $75,000 jurisdictional amount for each of the Individual Plaintiffs. *See, e.g.*, *Valenta,* 2021 WL 7185785, at \*5.

41.    The Complaint also seeks to recover the costs of suit, including "reasonable attorneys' fees." Compl. ¶ 63 For the purposes of removal, the Third Circuit has held that in calculating the amount in controversy, courts "must consider potential attorneys' fees" where they are recoverable under a statutory cause of action (as they are here). *Suber v. Chrysler Corp.*, 104 F.3d 578, 585 (3d Cir. 1997); *see also Venuto v. Atlantis Motor Grp, LLC*, 2017 WL 4570283, at *3 (D.N.J. Oct. 13, 2017) (noting that "reasonable attorneys' fees . . . must be counted if they are available under New Jersey state law" for "purposes of calculating the amount in controversy" and denying motion to remand where it was "not a legal certainty that plaintiffs cannot recover more than $75,000").

42.    A typical rule of thumb in the Third Circuit in calculating attorneys' fees to determine the amount in controversy is 30 percent of the compensatory and/or punitive damages. *See, e.g., Ciccone v. Progressive Specialty Ins. Co*., 2020 WL 7319777, at *4 (M.D. Pa. Dec. 11, 2020) (including attorneys' fees of 30 percent of the total of plaintiff's compensatory and treble damages to find that plaintiff's individual claims met the amount in controversy); *Rodriguez v. Burlington County Corrections Dept*., 2015 WL 790521, at *2 (D.N.J. Feb. 25, 2015) ("The Third Circuit has noted that attorney's fees can be estimated to be as high as 30% of the final judgment."). As outlined above, the Complaint alleges compensatory damages and punitive damages that already exceed the $75,000 threshold for each Individual

Plaintiff. But if those damages were increased by another 30 percent to account for attorneys' fees, there can be no doubt that the amount in controversy is satisfied.

43.    Finally, the Individual Plaintiffs seek broad injunctive relief tied to CoStar's ongoing compliance with Daniel's Law. In the Third Circuit, the value of injunctive relief may be considered in determining the amount in controversy, and is measured by the value of the interest sought to be protected by the equitable relief requested." *Hunter v. Greenwood Trust Co.*, 856 F. Supp. 207, 219 (D.N.J. 1992); *In re Corestates Trust Fee Litig.*, 39 F.3d 61, 65 (3d Cir. 1994) ("In injunctive actions, it is settled that the amount in controversy is measured by . . . 'the value to the plaintiff to conduct his business or personal affairs free from the activity sought to be enjoyed'" (citation omitted)). Here, the interest the Complaint putatively seeks to protect is the interest of the Individual Plaintiffs and the Unidentified Covered Persons in their physical safety and freedom from threatening communications. *See* Compl. ¶¶ 15-23 (alleging that the Individual Plaintiffs face threats to their safety and/or threatening phone calls or text messages based on the disclosure of their home addresses and phone numbers). While CoStar emphatically rejects any allegation that it has engaged in conduct that has endangered this interest, the Individual Plaintiffs and Atlas would surely contend that the value of this interest exceeds $75,000 for each of the Individual Plaintiffs and Unidentified Covered Persons.

44.    Because the parties are completely diverse and the amount in controversy exceeds $75,000, the requirements of diversity jurisdiction are satisfied.

## THIS COURT HAS JURISDICTION PURSUANT
## TO THE CLASS ACTION FAIRNESS ACT

45.    In addition, or in the alternative, to finding that this case is removable under 28 U.S.C. § 1332(a), removal is proper because the instant case is a "mass action" under CAFA, and all other requirements for CAFA jurisdiction are satisfied.

46.    "Congress enacted [CAFA] to facilitate adjudication of certain class [and mass] actions in federal court." *Dart Cherokee*, 574 U.S. at 89. CAFA's "provisions should be read broadly," and there is a "strong preference" that interstate actions like this one "should be heard in a federal court if properly removed by any defendant." *Id.* In particular, CAFA allows federal courts to exercise jurisdiction over "mass actions," defined as "any civil action . . . in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact," 28 U.S.C. § 1332(d)(11)(B)(i), where certain requirements are satisfied. Specifically, jurisdiction over such actions is proper if: (1) any plaintiff is a citizen of a state different from any defendant (i.e., minimal diversity exists), and (2) the amount in controversy exceeds $5 million in the aggregate and $75,000 for individual plaintiffs. 28 U.S.C. §§ 1332(d)(2), (d)(6), (d)(11)(B)(i). These requirements are satisfied here.

### A.    The Case is a Mass Action

47.    Under CAFA, "the term 'mass action' means any civil action . . . in which *monetary relief claims of 100 or more persons* are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact[.]" 28 U.S.C. § 1332(d)(11)(B)(i) (emphasis added).

48.    The "question is not whether 100 or more plaintiffs answer a roll call in court, but whether the '*claims*' advanced by 100 or more persons are proposed to be tried jointly." *Bullard v. Burlington N. Santa Fe Ry. Co.*, 535 F.3d 759, 762 (7th Cir. 2008) (emphasis added). "Where a single complaint joins more than *100 separate claims* involving common questions of law and fact, there is a presumption that those plaintiffs have implicitly proposed a joint trial." *Ramirez v. Vintage Pharms., LLC*, 852 F.3d 324, 329 (3d Cir. 2017) (emphasis added).

49.    Here, Atlas alleges that it is the assignee of monetary relief claims of "approximately 19,496 individuals"—well in excess of the 100-claim threshold—but purports to assert them collectively in the Complaint. *See* Compl., ¶ 25. But as described above, however, Atlas is only a *partial* assignee of the claims being asserted on behalf of these individuals—meaning that each of the 19,496 assignors retain an interest in individual "monetary relief claims" being asserted in the action. Where a person assigns away only part of his claim, that person continues to be a

"real part[y] in interest" to any litigation brought to vindicate that claim. *Grassi*, 894 F.2d at 185. This is precisely the case here.

50.     Further, in the context of evaluating whether a putative class meets Rule 23's numerosity requirement, the Third Circuit has held that *both* assignors and assignees of partial interests in the same claim "can be counted as class members." *In re Modafinil Antitrust Litig.*, 837 F.3d 238, 251-52 (3d Cir. 2016), *as amended* (3d Cir. Sept. 29, 2016) (where two potential class members "were partial assignees of [claims of] two other class members," the "partial assignees are appropriately considered to be members of a class" as well); *see also id*. at 252 ("*Fine Paper Litigation* [, 632 F.2d 1081, 1089 (3d Cir. 1980)] envisioned the class action mechanism as a proper tool for partial assignees to participate in the lawsuit[.]"). Similarly here, in determining the number of "monetary relief claims" being asserted in this action, the Court should consider not only Atlas, but also the 19,496 individuals holding interests in individual claims for relief under Daniel's Law.

51.     Atlas only has standing to sue (if at all) in its alleged capacity as the assignee for each individual assignor. Because Atlas "steps into the shoes of" each assignor in this suit, 29 Williston on Contracts § 74:56, Atlas's "right against" any defendant is "subject to all defenses" that any Defendant may have had against any assignor, including "defenses based on *where* and *how* the claims may be prosecuted." *Winn-Dixie Stores, Inc. v. E. Mushroom Mktg. Coop.*, 2020 WL

5211035 at *11 (E.D. Pa. Sept. 1, 2020) (citing Restatement (First) of Contracts § 167(1) (1932)) (emphasis added).

52.    That Atlas did not name each of the 19,496 assignors in the case caption does not change the fact that Atlas is not suing on its individual behalf, but is entitled to bring each claim alleged in the Complaint only as the assignee for a corresponding and specific assignor, each of whom retains an interest in the claims being asserted on their behalf in the litigation.

53.    Thus, because Atlas is suing to recover for the "monetary relief claims of 100 or more persons" in a single lawsuit, 28 U.S.C. § 1332(d)(11)(B)(i), the mass-action numerosity element is satisfied.

**B.    Minimal Diversity is Satisfied**

54.    For purposes of establishing federal jurisdiction, CAFA requires only minimal diversity—that is, at least one plaintiff must be a citizen of a state different from the state of citizenship of any named defendant. 28 U.S.C. § 1332(d)(2)(A).

55.    As discussed above, CoStar is organized under the laws of Delaware with its principal place of business in Washington, D.C. CoStar is thus a citizen of Delaware and the District of Columbia.

56.    As discussed above, based on the face of the Complaint, each of the Individual Plaintiffs is a citizen of New Jersey. *See supra ¶¶* 17-19.

57.    Because CoStar's citizenship (Delaware and the District of Columbia) is different from the citizenship of each of the named plaintiffs (New Jersey), the minimal diversity requirement is satisfied. *See* 28 U.S.C. § 1332(d)(2)(A).

**C.    The Alleged Individual Amount in Controversy Exceeds $5 Million in the Aggregate and $75,000 for Each Claimant**

58.    CAFA provides that, "[i]n any class [or mass] action, the claims of the individual class members [or plaintiffs] shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. §§ 1332(d)(6), (d)(11)(A). In the case of mass actions (as opposed to traditional class actions), there is an additional requirement that "jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements under [28 U.S.C. § 1332(a)]," which requires that the amount in controversy exceed $75,000. 28 U.S.C. § 1332(d)(11)(B)(i). In other words, CAFA confers federal jurisdiction over a mass action where the aggregate amount in controversy exceeds $5 million, and over individual plaintiffs participating in that mass action where their individual amount in controversy exceeds $75,000.

59.    As stated above, CoStar denies the validity and merit of Plaintiffs' claims. Nevertheless, for purposes of setting forth grounds for this Court's jurisdiction—and without conceding that Plaintiffs are entitled to damages or any

relief whatsoever—it is apparent that both amount-in-controversy requirements for CAFA mass action removal are met here.

60.   As to the aggregate amount in controversy, the $5,000,000 threshold is easily satisfied by the Complaint's request for statutory damages under Daniel's Law. Atlas purports to assert claims on behalf of 19,496 covered persons, on top of the claims of the eight named plaintiffs, all for at least $1,000 "for each violation" of the statute. At a minimum, looking simply at the statutory damages sought in the Complaint, the "aggregate" damages sought in the Complaint totals over $19.5 million.

61.   And as to the "individual" amount in controversy, as stated and explained above, the "possible" damages for each of the Individual Plaintiffs (and the Unnamed Covered Persons) readily exceeds $75,000. *See supra* at ¶¶ 31-43. Adding together potential statutory, actual, and punitive damages that the Complaint seeks, as well as the putative value of injunctive relief and attorneys' fees, the individual jurisdictional threshold has been met.

## ALL PROCEDURAL REQUIREMENTS ARE SATSIFIED

62.   **Removal is timely.** As noted above, on February 29, counsel for CoStar accepted service of the Complaint, and CoStar filed an acknowledgement of service on March 1, 2024. On March 22, 2024, CoStar timely removed the action to this

Court, within 30 days of service of the Complaint. *See generally Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999).

63.    This Amended Notice relies on information concerning the nature of Atlas's putative claims and the assignments underlying those claims discovered by CoStar on or about April 12, 2024. Accordingly, this Amended Notice is timely because it is being filed within 30 days "after receipt by the defendant . . . of a copy of . . . other paper from which it may be first ascertained that the case" is removable under CAFA's mass action provisions. 28 U.S.C. § 1446 (b)(3); *see also Portillo v. National Freight, Inc.*, 169 F. Supp. 3d 585, 593 (D.N.J. 2016) (removal under CAFA was timely when made within 30 days of receipt of a "litigation document subsequent to the initial pleading" that showed a basis for removal).

64.    **Removal is to the proper court**. Because Plaintiffs' Complaint was filed in the Superior Court of New Jersey, Bergen County, CoStar properly removed this action to the United States District Court for the District of New Jersey, Newark Division, which encompasses the location in which the Complaint was initially pending in state court (i.e., Bergen County). *See* 28 U.S.C. § 1441(a) ("[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending"). Following removal, the case was subsequently

designated and assigned to the Honorable Judge Harvey Bartle, III of the United States District Court for the Eastern District of Pennsylvania, along with approximately 60 other related cases filed by Atlas asserting violations of Daniel's Law against various defendants. *See* Dkt. No. 6. The action was subsequently reallocated to the U.S. District Court for the District of New Jersey, Camden Division. *See* Dkt. No. 8.

65.    **Rule 11.** This Amended Notice of Removal is signed pursuant to Rule 11 of the Federal Rules of Civil Procedure.

66.    **All pleadings and process are attached.** Pursuant to 28 U.S.C. § 1446(a), a true and correct copy of the Summons, Complaint, Notice of Service of Process, and other pleadings are attached hereto as Exhibit A. Exhibit A constitutes all of the process, pleadings, and orders served on CoStar to date in the state court action.

67.    **Notice is being provided forthwith**. Pursuant to 28 U.S.C. § 1446(d), upon filing this Amended Notice of Removal, the undersigned will promptly give written notice of such filing to Plaintiffs through their counsel of record.

**WHEREFORE**, CoStar hereby removes the above-captioned action from the Superior Court, Bergen County and requests that further proceedings be conducted in this Court as provided by law.

Dated: April 30, 2024                    **LATHAM & WATKINS LLP**

/s/ *Kevin M. McDonough*
Kevin M. McDonough (ID: 41892005)
Serrin Turner (*pro hac vice*)
1271 Avenue of Americas
New York, NY 10020
Telephone: (212) 906-1200
Email: kevin.mcdonough@lw.com
        serrin.turner@lw.com

Scott D. Joiner (*pro hac vice*)
505 Montgomery Street, Suite 2000,
San Francisco, CA 94111
Telephone: (415) 391-0600
Email: scott.joiner@lw.com

Bradley M. Baglien (*pro hac vice*)
555 Eleventh Street NW, Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
Email: bradley.baglien@lw.com

*Attorneys for CoStar*